## Hopkins *against* Robinson.

An entry upon two contiguous town lots under a deed affording colour of title, is presumed to be in accordance with the same, so as to render the actual possession of part a possession co-extensive with the boundaries described in the deed.

Slight evidence of interruption, such as results from the demolition of fences, as between the adverse holder and the person ousted, does not break the continuity of possession.

WRIT of error to the common pleas of *Alleghany* county.

This was an action of ejectment brought by William Robinson and others, heirs of John Wilkins deceased, the plaintiffs in error, against Ruth Hopkins, to recover lots No. 49 and 50 in the plan of the town of Alleghany.   The plaintiffs exhibited a deed from Matthew Ernest to John Wilkins, for the lots in question, dated the 16th of May 1797, acknowledged before James Robinson, Esquire, and recorded on the 27th of May 1799.   Also, the last will and testament of the said John Wilkins, proven the 14th of December 1809, by which he devised all his property not otherwise disposed of, to the plaintiffs, without a more particular indication of the lots in controversy as belonging to him.

The defendant was the vendee of William Robinson, Jun., upon whom the estate of his father, James Robinson, Esq., at his decease, descended, and relied upon a conveyance from the said Matthew Ernest and wife to the said James Robinson for the lots in dispute, dated the 1st of January 1799 and not recorded until the 30th of June 1808 ; and contended that, from the circumstances of Matthew Ernest being the son-in-law of John Wilkins, the wife of Ernest not having joined in the deed to Wilkins, the same having been acknowledged before James Robinson, Esq., the subsequent grantee, and not having been recorded until after the execution of the deed from Ernest and wife to Robinson, it should be presumed that the deed from Ernest to Wilkins was intended, and raised a mere trust in Wilkins, for the benefit of Ernest.   Finding this defence, however, unavailable, the defendant sought protection under the statute of limitations.

[Hopkins v. Robinson.]

He proved, in substance, that James Robinson, by his tenant James Ferguson, about the year 1800, made a clearing, erected a cabin on the commons near the lots, and extended *his fences* so as to embrace nearly the whole of the lots and about three acres of the common ground.   There was also another cabin on the corner of the lots, in which Martha Graham and others, tenants of James Robinson, resided.   This possession was continued, and the lots cultivated, without interruption (although John Wilkins resided, in the meantime, in the city of Pittsburgh) until the year 1812, when general Crooks's brigade was encamped near the premises, by whom the fences were partly torn down and destroyed.   After the interval of a few months, the range of the former fences was so much contracted in being rebuilt, as to exclude from their boundary a large portion of the commons and about one-third or one-half of the lots in controversy.   It was also proved by the plaintiffs, that about this period the fence was again thrown open and a race course permitted to pass through the lots.   Ferguson still remained in his cabin and exercised acts of ownership for William Robinson, Jun., son of James Robinson, Esq., until the new house, now erected upon the premises, was projected in 1814.   ·He then removed to a cabin at the rear of the penitentiary.   The building was commenced in the autumn of 1815 and finished in 1816.   During the summer of 1815 part of the lots was occupied by Martha Graham, tenant of William Robinson, Jun. as a garden.   Since that time the possession of William Robinson, Jun., and those who claimed under him, has been undisturbed.   The assessors' books also exhibited the continual assessment and payment of taxes for the lots in dispute by James Robinson, Esq., in his lifetime, and by William Robinson, Jun. after his decease.   There was no assessment of the lots as the property of John Wilkins or of those claiming under him.   The defendant produced a witness, Alexander Robinson, who stated that James Robinson, Esq. once said he had the entire settling and renting of Wilkins's property on that side of the river, and that on one occasion pointing, at some distance, down to where the old cabin was, he said that was Wilkins's and the next lot he allowed was his own.   The same witness testified that, after the rails were burned in 1812, the fence did not embrace any part of the lots in controversy.   The court below *charged in relation to the* testimony of this witness, that it would be hazardous to have property dependent upon presumptions of so slight a nature as the detail of a single sentence explained by a single gesture, the whole occurring twenty-one years back; but left it to the jury to determine the effect of his testimony.

The errors assigned were the following:

1. The court erred in charging the jury with regard to the evidence of Alexander Robinson, and that there was slight reason to believe that his conversation related to this property.

2. The court erred in charging, that if James Robinson had any

[Hopkins v. Robinson.]

part of lots 49 and 50 enclosed, it was a possession in law of the whole.

3. In charging that the jury had no room to doubt the testimony of Mrs Graham, and in charging that from 1812 to 1816, Ferguson had a possession that would enable ejectment to be maintained against him; and that there was strong ground to presume that the lots were possessed and acts of ownership exercised over them; and that possession must be according to the subject matter; and that the occupancy need not be constant; and charging that there was ground for inferring that any acts implying property and possession, in the intermediate period, were under Robinson's authority.

4. In charging with regard to the operation of the act of limitations.

*Fetterman*, for plaintiffs in error.

Both parties claim under Matthew Ernest, who was greatly to be blamed for executing two deeds for the same property. In 1800 or 1801, James Robinson, Esq. put Ferguson in the neighbourhood of these lots, saying, " Go in under me." Ferguson then erected his house, not on the lots, but on the common, where he had no right to build. In 1804 or 1805 he had a clearing of eight or ten acres, which embraced part of these lots. In 1812 the fences were burned by the soldiers of general Crooks. It was important for us to show how Ferguson took possession and how he was put in by James Robinson. For this purpose we produced Alexander Robinson as a witness, who testified that James Robinson held the property for John Wilkins. The court, however, took the facts disclosed by his testimony from the jury, when they should have told the jury that, if they believed his testimony, they should find for the plaintiffs. In the next place we contend, it was error in the court below to say it must be presumed that the entry of James Robinson, by his tenant Ferguson, was under colour of title, and that the possession of a part was possession of the whole. They induced the jury to believe that the possession of a part of one lot was possession of both. This was error. 6 *Cowen* 623. As to continuity of possession, the court below went too far in laying down the law on this point under the statute of limitations. It was not the business of the jury to infer the fact of an unbroken possession. It was incumbent on the defendant to show it affirmatively. The plaintiffs were minors; and slight acts of adverse ownership, such as the payment of taxes, were not sufficient to keep up the possession and deprive the minor heirs of their rights. That the mansion house draws the possession to it, is a well settled principle. Here it stood upon the common; how then could there be, an adverse possession of the lots, particularly since the drawing in of the fences after the burning in 1812 excluded the larger portion of the lots and one of them entirely?

Here the court intimated that the only question was, whether the

[Hopkins v. Robinson.]

burning of the fences in 1812 interrupted the possession of James Robinson?

*H. W. Watts* and *Forward,* for the defendants in error, the court declined hearing.

PER CURIAM.—There is no doubt that James Robinson, from whom the defendant claims, entered originally under his deed from captain Ernest. The presumption is, that every man enters according to his title; and, though it is not conclusive, it endures till it is disproved. Having thus entered by his tenant in 1800, he took possession of the ground in dispute by clearing and fencing it, with, perhaps, some other ground belonging to him, but all as one tenement; and continued to occupy it till 1812, when it was thrown open and a great part of the rails burnt by the soldiers of general Crooks's brigade. The fence was rebuilt with the remaining rails, but the enclosure was contracted so as to exclude at least the greater part of the ground in dispute; and the question is, whether the adverse possession of the part excluded ceased with the actual possession of it in 1812. It was put to the jury to say whether the fence, as rebuilt, excluded these lots entirely; and they were instructed that if it did not, then that Robinson, having entered by colour of title, had all along been in adverse possession of the whole, and in this there undoubtedly was no error.

Judgment affirmed.